■ FACEBOOK, INC., et al., Respondents, v DLA PIPER LLP (US) et al., Appellants, et al., Defendants. [23 NYS3d 173]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered May 11, 2015, which denied the pre-answer motions of defendants-appellants DLA Piper LLP (US), Christopher P. Hall, John Allcock, Robert W. Brownlie, and Gerard A. Trippitelli (collectively the DLA Piper defendants); Milberg LLP, Sanford P. Dumain and Jennifer L. Young (collectively, the Milberg defendants); and Lippes Mathias Wexler Friedman LLP, Dennis C. Vacco and Kevin J. Cross (collectively, the Lippes defendants) to dismiss the complaint under CPLR 3211 (a) (7), unanimously reversed, on the law, without costs, the motions granted, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

This case arises from dealings dating back over a decade between plaintiff Mark Elliot Zuckerberg and nonparty Paul Ceglia. The underlying facts of this case are as follows:

On April 28, 2003, Ceglia hired Zuckerberg to design a

website for a company called Street Fax, Inc. Ceglia and Zuckerberg executed a two-page contract (the Street Fax Contract) and Zuckerberg performed some work under the contract, although he was not paid in full by Ceglia.

In December 2003, Zuckerberg conceived of Facebook, which he launched on February 4, 2004.

On June 30, 2010, Ceglia, through defendant attorney Paul Argentieri, filed a complaint in Allegheny County Supreme Court against Facebook and Zuckerberg (the Ceglia action), alleging that on April 28, 2003, Zuckerberg and Ceglia purportedly entered into a "Work For Hire Contract." This purported contract allegedly reflected Ceglia's agreement to pay Zuckerberg for developing the Street Fax website and a separate website with the working title of "The Face Book," and Ceglia's purported acquisition of a 50% interest in the software, programming language and business interests derived from any expansion of The Face Book, along with an additional 1% interest for each day the website was delayed beyond January 1, 2004. At the time they filed the complaint, Ceglia's representatives obtained an ex parte temporary restraining order (TRO) from the court restraining Facebook from transferring, selling, or assigning any assets owned by it. The TRO was served on Facebook on July 6, 2010, and expired on or before July 23, 2010.

On July 9, 2010, the case was removed to federal court based on diversity jurisdiction. From the outset of the litigation, Zuckerberg took the position that the Work For Hire Contract was a forgery and the Ceglia action was fraudulent.

In early 2011, Ceglia and Argentieri offered a contingency fee arrangement to various law firms via a "Lawsuit Overview" document, which mapped out the strategy and bases of the lawsuit. Several law firms, including the DLA Piper and the Lippes defendants, as well as Kasowitz, Benson, Torres and Friedman, LLP (Kasowitz), agreed to represent Ceglia.

On March 30, 2011, a forensic e-discovery consultant working with Kasowitz discovered the original Street Fax Contract on Ceglia's computer hard drive and concluded it had been altered to create the "Work For Hire Contract" by adding references to Facebook. Kasowitz notified Argentieri of these findings several times and immediately withdrew as Ceglia's counsel.

On April 11, 2011, the DLA Piper and the Lippes defendants (DLA-Lippes) filed an amended complaint in the Ceglia action repeating Ceglia's claims against Facebook based on the Work For Hire Contract, and quoting, but not attaching, purported

emails between Zuckerberg and Ceglia discussing the development of Facebook.

On April 13, 2011, Kasowitz sent a letter to the DLA-Lippes defendants, informing them that on March 30, it had seen documents on Ceglia's computer that established that the Work For Hire Contract was a forgery and that it had communicated these findings to Argentieri on March 30, April 4, and April 12. The letter further stated that Kasowitz would agree, pending an investigation that defendant Vacco of Lippes Mathias had promised to undertake, to refrain from reporting its findings to the Federal Court.[1] This investigation was indeed undertaken as discussed infra.

On June 2, the parties moved and cross-moved for expedited discovery concerning the Work For Hire Contract, complete with affidavits and expert evidence both for and against the authenticity of the contract. On June 29, on the eve of the hearing for expedited discovery, the DLA-Lippes defendants withdrew from the case without explanation.[2] The Federal Magistrate ordered expedited discovery into the authenticity of the Work For Hire Contract and the purported emails.

During the expedited discovery period, Ceglia hired the Milberg defendants, which first entered an appearance on March 5, 2012. They moved to withdraw from representing Ceglia on May 20, 2012.

On November 26, 2012, Ceglia was indicted for mail and wire fraud as a result of his scheme to defraud plaintiffs. He subsequently fled the jurisdiction and is currently a fugitive.

On March 26, 2013, following discovery, the Federal Magistrate recommended that the District Court dismiss the Ceglia action with prejudice, finding that the Work for Hire Contract and purported emails were all forgeries and that the lawsuit was a massive fraud on the court. This recommendation was adopted by the District Court on March 25, 2014, and the complaint was dismissed.

Based on these factual allegations, plaintiffs commenced the instant action, asserting claims for malicious prosecution and attorney deceit against defendants-appellants (defendants), among others, alleging that they initiated the Ceglia lawsuit

---

1. The complaint in the instant action alleges, *on information and belief*, that shortly after notifying Argentieri of its findings, and *prior* to April 11, 2011, the date the amended complaint in the Ceglia action was filed, Kasowitz advised the DLA and Lippes defendants what had been discovered concerning the Street Fax Contract.

2. Ceglia was represented by 23 other attorneys after the DLA-Lippes defendants withdrew.

without probable cause, and thereafter continued it even as they knew, or reasonably should have known, that it was fraudulent, without merit, and based on fabricated evidence from the moment the original complaint was filed and at all times while the action was pending.

Defendants moved to dismiss the complaint, alleging, among other things, that the allegations regarding malicious prosecution failed to demonstrate that they acted with "actual malice," that they lacked "probable cause" to maintain the action, or that plaintiffs sustained a "special injury." With respect to the claims brought under Judiciary Law § 487 for attorney deceit, defendants argued that the complaint should be dismissed because it failed to allege with the requisite particularity that they intended to deceive the court or plaintiffs, that they engaged in a chronic and extreme pattern of legal delinquency, or that they were aware of the fraud and deceit during the Ceglia action. Plaintiffs opposed those respective motions and the motion court denied all motions. For the following reasons, we now reverse.

On a motion to dismiss pursuant to CPLR 3211, we must accept as true the facts as alleged in the complaint and accord plaintiffs the benefit of every favorable inference (*see Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]). However, "[f]actual allegations presumed to be true on a motion pursuant to CPLR 3211 may properly be negated by affidavits and documentary evidence" (*Wilhelmina Models, Inc. v Fleisher*, 19 AD3d 267, 269 [1st Dept 2005], citing *Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 [1st Dept 1999], *affd* 94 NY2d 659 [2000]; *see also Matter of Sud v Sud*, 211 AD2d 423, 424 [1st Dept 1995]).

With respect to the civil malicious prosecution claim, that cause of action should have been dismissed. The tort of malicious prosecution requires proof of each of the following elements: "(1) the commencement or continuation of a . . . proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the [plaintiff], (3) the absence of probable cause for the . . . proceeding and (4) actual malice" (*Broughton v State of New York*, 37 NY2d 451, 457 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]). Additionally, a plaintiff must also allege and prove "special injury" (*Engel v CBS, Inc.*, 93 NY2d 195, 201 [1999]).

With respect to the element of probable cause, a plaintiff must allege that the underlying action was filed with "a purpose other than the adjudication of a claim" and that there was "an entire lack of probable cause in the prior proceeding"

(*Engel*, 93 NY2d at 204). Moreover, the lack of probable cause must be "patent" (*Butler v Ratner*, 210 AD2d 691, 693 [3d Dept 1994], *lv dismissed* 85 NY2d 924 [1995]). In this context, the Court of Appeals has stated as follows: "Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. The want of probable cause does not mean the want of any cause, but the want of any reasonable cause, such as would persuade a man of ordinary care and prudence to believe in the truth of the charge" (*Burt v Smith*, 181 NY 1, 5-6 [1905]).

In a malicious prosecution action, the burden of proof to establish a want of probable cause is on the plaintiffs (*id.* at 10).

Here, the Allegheny Court's granting of a TRO at the inception of the Ceglia action, prior to any of the defendants' representation of Ceglia, created a presumption that Ceglia had probable cause to bring the case. This presumption must be overcome by specifically pleaded facts (*see Hornstein v Wolf*, 67 NY2d 721, 723 [1986]). Moreover, a plaintiff's factual allegations regarding lack of probable cause and malice may be disproved by the evidentiary material submitted by defendant in support of a motion to dismiss (*Shaffer v Gilberg*, 125 AD3d 632, 635 [2d Dept 2015]).

Applying these principles to this case, we find that the allegations in the instant complaint concerning defendants' lack of probable cause are entirely conclusory, and are thus inadequate to support the lack of probable cause element of the malicious prosecution claim (*see Web Mgt. v Sphere Drake Ins.*, 302 AD2d 273, 273 [1st Dept 2003]). Despite plaintiffs' claims that the Work For Hire Contract was an obvious forgery, the Allegheny Court granted a TRO after reviewing it. Defendants produced experts who took issue with plaintiffs' experts on that score and the authenticity of the document was vigorously contested throughout the Ceglia litigation. Moreover, the DLA-Lippes defendants conducted a quite thorough investigation after being advised of Kasowitz's findings, going so far as subjecting Ceglia to a polygraph test, which he passed. The Kasowitz letter alone is not sufficient to support a claim that any further representation of Ceglia was patently unsupported by probable cause.

Inasmuch as plaintiffs cannot demonstrate the existence of the element of probable cause, we need not consider the remaining elements of actual malice or special injury. The cause of action for malicious prosecution should have been dismissed.

We turn now to the Judiciary Law claims. Relief under a cause of action based upon Judiciary Law § 487 "is not lightly given" (*Chowaiki & Co. Fine Art Ltd. v Lacher*, 115 AD3d 600, 601 [1st Dept 2014]) and requires a showing of "egregious conduct or a chronic and extreme pattern of behavior" on the part of the defendant attorneys that caused damages (*Savitt v Greenberg Traurig, LLP*, 126 AD3d 506, 507 [1st Dept 2015]). Allegations regarding an act of deceit or intent to deceive must be stated with particularity (*see Armstrong v Blank Rome LLP*, 126 AD3d 427, 427 [1st Dept 2015]); the claim will be dismissed if the allegations as to scienter are conclusory and factually insufficient (*see Briarpatch Ltd., L.P. v Frankfurt Garbus Klein & Selz, P.C.*, 13 AD3d 296, 297-298 [1st Dept 2004], *lv denied* 4 NY3d 707 [2005]; *Agostini v Sobol*, 304 AD2d 395, 396 [1st Dept 2003]).

Here, the allegations that defendants knew of Ceglia's fraud are conclusory and not supported by the record. Although plaintiffs allege that the DLA-Lippes defendants had been advised by Kasowitz that the Work For Hire Contract was a forgery *prior* to the filing of the amended complaint in the Ceglia action on April 11, the record unequivocally shows that the Kasowitz letter to that effect was dated April 13, two days *after* the amended complaint was filed. There is nothing to indicate that this information had been communicated to the defendants prior to the issuance of that letter. Moreover, plaintiffs offer no support for their claim that defendants had actual knowledge of the fraudulent nature of the claim based on statements made to them by Ceglia. In fact, the opposite is true. As noted, Ceglia consistently maintained that the Work For Hire Contract was genuine and even passed a polygraph test covering the contract and his other claims. Statements made in pleadings upon information and belief are not sufficient to establish the necessary quantum of proof to sustain allegations of fraud (*see Angel v Bank of Tokyo-Mitsubishi, Ltd.*, 39 AD3d 368, 370 [1st Dept 2007]). Even assuming that the DLA-Lippes defendants knew of Kasowitz's finding before they filed the amended complaint, and regardless of the fact that the Milberg defendants knew about the Street Fax Contract when they represented Ceglia, at any of those times, there was no conclusive proof of Ceglia's fraud that rendered their representation deceptive. In fact, the dispute over the authenticity of the contract remained central to the Ceglia litigation throughout that action, and was the subject of expert testing and opinion, both in favor of, and against, its authenticity. As a result, the Judiciary Law § 487 claim should have been dismissed. Concur—Gonzalez, P.J., Sweeny, Renwick and

Manzanet-Daniels, JJ. 